UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

RCI ENTERTAINMENT (SAN
ANTONIO), INC., d/b/a XTC
CABARET,

      *Plaintiff*,

v.                                      **Case No. SA-21-CV-0194-JKP**

THE CITY OF SAN ANTONIO, et al.,

      *Defendants*.

## THIRD ORDER
## <u>DENYING INJUNCTIVE RELIEF</u>

Before the Court is *Plaintiff's Application for Temporary Restraining Order* (ECF No. 29). The City of San Antonio has filed a response (ECF No. 32) and the Court has held a hearing on the motion. The motion is ripe for ruling. After considering the motion, briefing, and applicable law, the Court denies the motion.

The Federal Rules of Civil Procedure specifically govern preliminary injunctions and temporary restraining orders. *See* Fed. R. Civ. P. 65. Plaintiff seeks a temporary restraining order ("TRO") against defendants. Because the City has responded and the Court has conducted a hearing on the matter, the Court considers the motion to be one for preliminary injunction.

"A preliminary injunction is an extraordinary remedy and should only be granted if the [movant has] clearly carried the burden of persuasion on all four requirements." N*ichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2008) (internal quotation marks omitted). Granting such "injunction is to be treated as the exception rather than the rule." *Healthpoint, Ltd. v. Stratus Pharm., Inc.*, 273 F. Supp. 2d 769, 777 (W.D. Tex. 2001). Courts do not award such an extraordinary remedy "as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).

To obtain a preliminary injunction or TRO, the movant must demonstrate the following equitable factors: "(1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) the grant of the injunction will not disserve the public interest." *Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011) (citing *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009)); *accord Jackson Women's Health Org. v. Currier*, 760 F.3d 448, 452 (5th Cir. 2014). Stated differently, a movant "seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20. And for purposes of issuing a preliminary injunction, the irreparable injury must occur "during the pendency of the litigation." *Justin Indus., Inc. v. Choctaw Secs., L.P.,* 920 F.2d 262, 268 n.7 (5th Cir. 1990).

Each case requires the courts to "balance the competing claims of injury and . . . consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24 (citation omitted). Whether to grant or deny a preliminary injunction lies within the sound discretion of the district courts. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 320 (1982). And when, "exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24 (citation omitted).

"The purpose of a preliminary injunction [(or TRO)] is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). But as the Fifth Circuit long ago cautioned, "[i]t must not be thought, however, that there is any particular magic in the phrase 'status quo,'" because "[t]he purpose of a prelim-

inary injunction is always to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits." *Canal Auth. of the State of Fla. v. Callaway*, 489 F.2d 567, 576 (5th Cir.1974). Courts recognize two types of injunctions, mandatory and prohibitory. *See*, *e.g.*, *Meghrig v. KFC W., Inc.*, 516 U.S. 479, 484 (1996) (recognizing mandatory and prohibitory injunctions); *In re Bahadur*, 441 F. Supp. 3d 467, 473 (W.D. Tex. 2020) (same).

> It is well settled that the issuance of a prohibitory injunction freezes the status quo, and is intended "to preserve the relative positions of the parties until a trial on the merits can be held." Preliminary injunctions commonly favor the status quo and seek to maintain things in their initial condition so far as possible until after a full hearing permits final relief to be fashioned.

*Wenner v. Tex. Lottery Comm'n*, 123 F.3d 321, 326 (5th Cir. 1997) (quoting *Camenisch*, 451 U.S. at 395); *accord Meghrig*, 516 U.S. at 484 (defining a prohibitory injunction as "one that 'restrains'" action). A mandatory injunction, on the other hand, "compels defendants to promptly and affirmatively act in a specific and extremely extensive manner." *U.S. v. Texas*, 601 F.3d 354, 362 (5th Cir. 2010); *accord Meghrig*, 516 U.S. at 484 (defining a mandatory injunction as "one that orders a responsible party to 'take action'"). These injunctions are labeled as mandatory because they mandate rather than enjoin action.

Although courts may appropriately issue a mandatory injunction when "the currently existing status quo is causing a party to suffer irreparable injury," *Canal Auth.*, 489 F.2d at 576, "[m]andatory preliminary relief, which goes well beyond simply maintaining the status quo pendente lite, is particularly disfavored, and should not be issued unless the facts and law clearly favor the moving party," *Martinez v. Mathews*, 544 F.2d 1233, 1243 (5th Cir. 1976); *accord Exhibitors Poster Exch., Inc. v. Nat'l Screen Serv. Corp.*, 441 F.2d 560, 561 (5th Cir. 1971) (per curiam) (describing the exception as "rare instances in which the facts and law are clearly in favor of the moving party").

The instant motion concerns events that occurred on April 3 and 4, 2021. Shortly after 9:00

p.m. on Saturday, April 3, 2021, multiple officers from the San Antonio Police Department arrived at Plaintiff's establishment to execute a search warrant. The warrant expressly incorporates a supporting affidavit and directs officers

> to enter and search said location for the following items found therein, including, but not limited to . . . [a]ny devices on, in, or around the property which provides power, electricity, water, or any type of elements of comfort which would allow a person or persons to occupy a place, use the place in any manner, or allow a place to be used for a business . . .. Also to be searched are papers, currency, schedules, or electronic devices which allow for any type of business transaction to occur, further the business of a location or record transactions of a business. Any electronic devices used for entertainment of the patrons, employees, or any person or which also furthers the business of the location or it's employees such as speakers, DJ equipment, lights, etc.

Ex. E (attached to Application). The City has provided the affidavit, which sets out probable cause for the search warrant based upon an alleged Certificate of Occupancy Violation in violation of Section 10-12 of the City Ordinance Code 2018-06-21-0493. *See* Ex. B (attached to Resp.). According to a Receipt for Property, the officers seized a water pump, employee records and miscellaneous paperwork, and more than $48,000 in cash. Ex. D (attached to Application). Officers also had a third-party generator removed from the premises and arrested a club manager, Giselle Hernandez.

Plaintiff seeks a five-pronged TRO. It seeks to (1) enjoin Defendants from prosecuting Ms. Hernandez on the issued citation; (2) enjoin Defendants from arresting or detaining any employee or representative of Plaintiff for operating; (3) require Defendants to return all seized property; (4) requiring Defendants to notify Plaintiff of the whereabouts of the third-party electricity generator and if impounded, secure its release; and (5) required Defendants to notify any third party involved in the removal of the generator of any issued temporary restraining order. Much of the requested injunctive relief goes beyond merely maintaining the status quo by seeking compel defendants to take certain action.

4

At the outset, the Court notes that the injunctive relief currently sought goes well beyond anything at issue in the original complaint filed on March 2, 2021. *See* Compl. (ECF No. 1) (seeking relief from unlawful revocation of Plaintiff's Certificate of Occupancy). To properly present these issues to the Court requires the filing of an amended or supplemental pleading. *See* Fed. R. Civ. P. 15(a) and (d). A party has no substantial likelihood of success for claims not properly before the Court.

Plaintiff, furthermore, merely states that it "has valid causes of actions against Defendants and a probable right to the relief sought." It provides little insight into the precise claims raised by the recent events but asserts that Defendants acted without legal basis under the color of law enforcement. However, that assertion is based on an erroneous view of the law. First, Plaintiff does not take into consideration that Texas defines "search warrant" as "a written order, issued by a magistrate and directed to a peace officer, commanding him to search for any property or thing and to seize the same and bring it before such magistrate." Tex. Code Crim. Proc. art. 18.01(a). Thus, based on the issued search warrant, the officers had probable cause to search for and seize property identified in the warrant.

Second, subject to an exemption under Subsection 10-6(d) that is inapplicable on the facts, Subsection 10-12(a) of the City Ordinance Code requires issuance of a certificate of occupancy before anyone may use or occupy any building or structure. Relying on Subsection 10-15(e) of the City Ordinance Code, Plaintiff takes the position that non-compliance with the certificate-of-occupancy requirement merely subjects violators to a $500 fine. Section 10-15(e) states in full:

> *Misdemeanor.* Any person violating any of the provisions of this Code or other ordinances which are enforced by the building official shall be deemed guilty of a misdemeanor. Each such person shall be deemed guilty of a separate offense for each day or portion thereof during which any violation of any of the provisions of this Code is committed, continued or permitted. Each violation may be punishable by a fine not to exceed five hundred dollars ($500.00).

But Subsection 15(d) provides:

> *Violation penalties*. Any person who violates a provision of this Code or fails to comply with any of the requirements thereof or who erects, constructs, alters or repairs a building or structure in violation of the approved construction documents or directive of the building official, or of a permit or certificate issued under the provisions of this chapter, shall be subject to penalties prescribed by law.

And Subsection 10-15(a) makes it "unlawful for any person, firm or corporation to erect, construct, alter, extend, repair, move, remove, demolish or occupy any building, structure or equipment regulated by this chapter, or cause same to be done, in conflict with or in violation of any of the provisions of this chapter." Further, Subsections 10-13(a) and (d) prohibit persons from (a) connecting service utilities in general and (d) connecting after an order to disconnect.

Texas defines "Law" as "the constitution or a statute of this state or of the United States, a written opinion of a court of record, a municipal ordinance, an order of a county commissioners court, or a rule authorized by and lawfully adopted under a statute." Tex. Penal Code § 1.07(a)(30). Similarly, "[c]onduct does not constitute an offense unless it is defined as an offense by statute, municipal ordinance, order of a county commissioners court, or rule authorized by and lawfully adopted under a statute." *Id*. § 1.03(a).

When officers arrived at Plaintiff's establishment with the valid search warrant, they observed illegal activity, i.e., employees and managers present on and occupying the premises in violation of the City ordinance and the order to vacate the premises and revocation of the certificate of occupancy. Based on their personal observation of unlawful conduct, the officers had probable cause to arrest Ms. Hernandez even if the only offense was violation of a municipal ordinance. *See Finucane v. Matson*, No. CIV.A. H-08-2402, 2010 WL 743942, at *4-5 (S.D. Tex. Mar. 1, 2010) (finding that a violation of a municipal ordinance in the presence of an officer provides a valid basis to arrest the individual). Texas law provides that "[a] peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view." Tex. Code Crim.

6

Proc. art. 14.01(b). "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) (involving an arrest for failure to wear seatbelts as required by the Texas Transportation Code). Officers who have probable cause to believe that an individual has committed a crime in their presence are authorized, but not required, "to make a custodial arrest without balancing costs and benefits or determining whether or not [the] arrest [is] in some way necessary." *Id.*

With respect to likelihood of success, the above analysis reveals severe flaws in Plaintiff's position that Defendants acted without legal basis under the color of law enforcement. Occupying or using a building without a valid certificate of occupancy violates a municipal ordinance. Plaintiff has provided no basis to enjoin arrests or detention of its employees or representatives for illegally operating the business without a valid certificate of occupancy. Nor has Plaintiff provided any authority for a federal court to enjoin a state prosecution. Similarly, Plaintiff has provided no basis to require Defendants to return all seized property or secure release of the electricity generator. Defendants have already informed Plaintiff as to the location of the generator.

In short, to find a substantial likelihood of success requires more than what Plaintiff has provided with the most recent motion for temporary restraining order. Furthermore, the Court's review of the claims asserted in the Original Complaint (ECF No. 1), i.e., (1) due process violations for government action without legal authority, including revoking Plaintiff's Certificate of Occupancy and disconnecting utilities and (2) procedural due process violations, reveals nothing to carry Plaintiff's burden to show a substantial likelihood of success on the matters asserted in the pending motion for temporary restraining order.

In addition, Plaintiff has not shown a substantial threat of irreparable injury if the Court

does not issue the requested injunctions. Plaintiff has not shown that it lacks an adequate remedy at law for the revocation of its certificate of occupancy or the disconnection of utilities. And the events of April 3 and 4, 2021, do not show a substantial threat of irreparable injury. In fact, to some extent, Plaintiff has already pursued various remedies in state court, and it appears that a state proceeding remains pending with a hearing set for next week.

For these reasons, the Court **DENIES** *Plaintiff's Application for Temporary Restraining Order* (ECF No. 29).

**IT IS SO ORDERED this 8th day of April 2021.**

**JASON PULLIAM**
**UNITED STATES DISTRICT JUDGE**